ERIKA BIRCH (Bar No. 7831)
T. GUY HALLAM, JR. (Bar No. 6101)
**STRINDBERG SCHOLNICK BIRCH**
**HALLAM HARSTAD THORNE**
1516 W. HAYS STREET
BOISE, ID 83702
(t) 208.336.1788
(f) 208.344.7980
erika@idahojobjustice.com
guy@idahojobjustice.com

Attorneys for Plaintiff

---

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO
### (Southern Division)

| | |
|---|---|
| ███████████ **a.k.a. JANE DOE,** <br><br> Plaintiff, <br><br> vs. <br><br> **AARON VON EHLINGER, an individual, and PRISCILLA GIDDINGS, an individual,** <br><br> Defendants. | **COMPLAINT AND DEMAND FOR JURY TRIAL** <br><br> Case No. <br> Judge: |

Plaintiff ████████[1] ("Jane Doe"), by and through her attorneys, hereby complains against Aaron von Ehlinger and Priscilla Giddings, ("Defendants") as follows:

## I.      NATURE OF THE CLAIMS

Jane Doe has claims against Defendants in their individual capacities for violation of, and/or conspiracy to violate, her equal protection rights under the U.S. Constitution, for violation

---

[1] We are redacting Plaintiff's real name and using the pseudonym Jane Doe in order to protect her privacy, her health and safety, and because she is the victim of a crime. Plaintiff will file a Motion to file an unredacted copy of her Complaint under seal forthwith.

COMPLAINT AND DEMAND FOR JURY TRIAL - 1

of her first amendment rights under the U.S. Constitution, and for various related state law claims.
Jane Doe seeks all available remedies including but not limited to compensatory damages, punitive
damages, attorneys' fees, costs, and interest.

## II.      PARTIES

1.      Plaintiff Jane Doe resides in the State of Idaho, Canyon County, and was serving
as an intern for the Idaho Legislature during the 2021 session.

2.      Defendant Priscilla Giddings ("Giddings") is a former Idaho legislator and is
believed to reside in Idaho County. She is being sued in her individual capacity.

3.      Defendant Aaron von Ehlinger ("von Ehlinger") is a former Idaho legislator and is
currently incarcerated at Idaho Correctional Institution in Orofino, Clearwater County. He is being
sued in his individual capacity.

4.      Plaintiff is not suing the state of Idaho, or any official in an official capacity. She
brough a separate lawsuit against the state in state court (Case No. CV01-21-13641), which was
resolved and dismissed with prejudice on November 23, 2022.

## III.      JURISDICTION AND VENUE

5.      This Court has original jurisdiction under the provisions of 28 U.S.C. § 1331 with
respect to Plaintiff's claims arising under federal law, and supplemental jurisdiction pursuant to
28 U.S.C. § 1367 with respect to Plaintiff's state law claims.

6.      Venue is proper with this Court under 28 U.S.C. § 1391 as Defendants reside within
and Plaintiff's claims occurred within this Court's judicial district, the State of Idaho.

7.      Further, the occurrences giving rise to the claims herein occurred within the Court's
Southern Division, specifically in Ada County, Idaho. Plaintiff's choice of venue is the Southern

COMPLAINT AND DEMAND FOR JURY TRIAL - 2

Division which is where she resides, where multiple witnesses reside, where relevant evidence is contained, and where the events occurred and/or the impacts were felt.

## IV.        GENERAL ALLEGATIONS

8.     Defendant Priscilla Giddings was elected as a state legislator in 2016 and served in the House of Representatives throughout the 2022 session. Giddings made an unsuccessful primary bid for Lieutenant Governor in 2022.

9.     In 2020, Defendant Aaron von Ehlinger was appointed by the Governor to fill an opening in the Idaho legislature. Von Ehlinger served in the House of Representatives until he resigned in April 2021.

10.     In November 2018, the Legislative Council voted in favor of approving a Respectful Workplace Policy of the Idaho Legislative Branch. Voting members of the Legislative Council included Speaker of the House Scott Bedke and Senate Pro Tem Brent Hill.

11.     The Respectful Workplace Policy of the Idaho Legislative Branch ("Respectful Workplace policy" or the "Policy") states that it is "applicable to all members of the Idaho Legislature, legislative employees, legislative interns and volunteers, and legislative partners in the course of conducting state business."

12.     The Policy also states that the Legislature is "committed to creating and maintaining a respectful work environment" and "an environment that is free from harassment and discrimination."

13.     The Policy goes on to state that the Legislature "will strive to prevent, eliminate, and impede the recurrence of harassing and discriminatory behavior and retaliation against

individuals who report, in good faith, violations of this policy." The Respectful Workplace policy also says that "retaliation is strictly prohibited."

14.     Records reflect that Giddings attended trainings regarding the Respectful Workplace policy in January 2018, January 2019, and January 2021.

15.     Records reflect that von Ehlinger also attended the training in January 2021.

16.     Plaintiff Jane Doe worked as a Legislative Page during the 2020 legislative session.

17.     She later submitted an internship application for the 2021 legislative session. Plaintiff's application listed her availability to work from January 11, 2021 until April 2, 2021 for 15-25 hours per week. The application stated that she anticipated being able to work from 6 am to 6 pm on Monday, Wednesday, and Friday.

18.     Along with her application, Ms. Doe submitted a letter of institutional support from the Vice President of College Relations at the institution of higher education she was enrolled in.

19.     Ms. Doe was later informed that she needed to identify a sponsoring legislator for her internship. Representative Chad Christensen, a House member from District 32, agreed to sponsor her.

20.     When she returned to work as an intern for Representative Christensen during the 2021 legislative session, Ms. Doe had recently graduated from high school. Ms. Doe was still a teenager.

21.     Ms. Doe received copies of and training regarding the Respectful Workplace Policy.

22.     At some point during the 2021 session, and prior to February 7, 2021, while Ms. Doe was working in the Idaho Capitol building, she met then Representative Aaron von Ehlinger.

COMPLAINT AND DEMAND FOR JURY TRIAL - 4

23.     Von Ehlinger was almost 39 years old at the time and had served in the legislature since his appointment by Governor Little in June 2020.

24.     Von Ehlinger gave Ms. Doe a copy of his legislative business card and hand-wrote his personal cell phone number on the back of the card.

25.     Von Ehlinger told Ms. Doe to call him any time if she needed anything at all.

26.     Von Ehlinger invited Ms. Doe to come into his office on at least one occasion.

27.     Von Ehlinger visited Ms. Doe at her office located in the Legislative Services Office, on more than one occasion.

28.     In early March 2021, von Ehlinger asked Ms. Doe if she would go out to eat dinner with him.

29.     On March 9, 2021, von Ehlinger picked up Ms. Doe near the Capitol building in a borrowed BMW car and took her to an expensive restaurant for dinner.

30.     After dinner, he drove Ms. Doe to his apartment instead of back to her car.

31.     Von Ehlinger told Ms. Doe he needed to get a parking permit from his apartment.

32.     When they parked at his apartment, von Ehlinger turned off the car, got out, went around to Ms. Doe's side of the car, opened her door, and reached his arm out to her motioning for her to get out of the car and follow him into his apartment.

33.     On March 9, 2021, von Ehlinger sexually assaulted Ms. Doe while they were in his apartment. Von Ehlinger made unwanted and non-consensual sexual contact with her and performed unwanted and non-consensual sexual acts on her.

34.     On her next working day at the legislature, March 11, 2021, Ms. Doe told Assistant Sergeant at Arms Kim S. Blackburn about the sexual assault by von Ehlinger.

35.     Upon information and belief, Blackburn in turn reported the assault to Speaker of the House, Scott Bedke.

36.     The Attorney General's office was also notified, and it was determined that a report to law enforcement would be made.

37.     Ms. Doe met with a Boise Police detective on March 11, 2021.

38.     On March 17, 2021, Representatives Scott Bedke, Mike Moyle, Jason Monks, and Megan Blanksma filed an ethics complaint with Representative Sage Dixon, Chairman of the House Ethics and Policy Committee (the "Ethics Committee") regarding von Ehlinger's behaviors vis-à-vis Jane Doe.

39.     Ms. Doe was later informed that the Ethics Committee had begun investigating a complaint against von Ehlinger related to his sexual assault of her.

40.     Ms. Doe was told that the next time she came to work, she needed to speak to the Committee.

41.     Ms. Doe cooperated in the Committee's ethics complaint investigation, including providing testimony to the Committee in a closed-door session.

42.     Von Ehlinger responded to the ethics complaint by submitting a confidential written response dated April 2, 2021 (referred herein as the "von Ehlinger Response").

43.     The von Ehlinger Response contained numerous untruthful statements and actions attributed to Ms. Doe. For example, the von Ehlinger Response represented that Ms. Doe engaged in consensual sexual behavior with him, among other untruthful and defamatory statements.

44.     After conducting its investigation, the Ethics Committee found probable cause to proceed with a public ethics complaint process to determine if von Ehlinger had engaged in conduct unbecoming a member of the House.

45.     Von Ehlinger issued a news release on April 16, 2021 about the Ethics Committee investigation.

46.     The von Ehlinger news release document reflects it was authored, and last modified by, "Representative Priscilla Giddings."

47.     At 11:47 a.m. on April 16, 2021, von Ehlinger's second attorney, David Leroy, who was representing von Ehlinger at that time, was advised in writing by Ms. Doe's attorneys that:

- The complaint documents and other public records released by the Attorney Generals/Legislature should be appropriately redacted to protect Personal Identifying Information about Ms. Doe.
- There was an expectation that he and von Ehlinger would take measures to do the same, regardless of the position that von Ehlinger takes in defending against the ethics complaint.
- Should such public outing of her identity or personal information occur, it is reasonably foreseeable that Ms. Doe will suffer severe emotional distress and as recent history has shown, perhaps worse, such as threats to her physical safety.
- That he and von Ehlinger should take appropriate steps to avoid this from occurring.

48.     At 12:42 p.m. on that same day, William Myers, the attorney representing the Ethics Committee, also advised Leroy that the Ethics Committee was "redacting the name and other identifying personal information of the complaining witness from the publicly available complaint and respectfully requests that you do the same in your communications with the media."

49.     Giddings and Leroy spoke on the afternoon of April 16, 2021. Upon information and belief, von Ehlinger participated in communications with Giddings on that day.

50.     Shortly after 3:00 p.m. on April 16, 2021, Leroy sent multiple reporters a copy of the unredacted von Ehlinger Response, which contained defamatory statements and intimate details about Ms. Doe.

COMPLAINT AND DEMAND FOR JURY TRIAL - 7

51.     On the afternoon of April 16, 2021, Giddings texted Bill Spence, a reporter with the Lewiston Tribune, asking Spence if he had received the response from Leroy and whether Spence was going to provide "balanced" coverage.

52.     At 3:30 p.m., April 16, 2021, Leroy told Annie Hightower, an attorney representing Jane Doe, that the response "was necessarily sent out upon request. It was done so without redaction . . ."

53.     On the afternoon of April 16, 2021, Redoubt News posted an article entitled *Idaho Swamp Trying to Unseat Another Conservative*. The article included a headline image that contained a photo of Ms. Doe when she was a minor. The Redoubt News article included a byline that said: "In the age of the 'me too' movement, what happens when men are falsely accused?"

54.     The Redoubt News article contained information attributed "mostly from the response filed from the attorney for Rep. von Ehlinger." The Redoubt News article was defamatory and invaded Ms. Doe's privacy.

55.     The Redoubt News article also included links to copies of von Ehlinger's Response and his press release.

56.     At 9:11 p.m., April 16, 2021, von Ehlinger's first criminal defense attorney copied Leroy on an email, denying that the first attorney had released an unredacted copy of the von Ehlinger Response, or Jane Doe's identity, and asking that any news reports stating otherwise be corrected.

57.     At 9:43 p.m. on April 16, 2021, Giddings posted on Facebook through her Priscilla Giddings ID Representative 7A account, a link to the Redoubt Article with her comment, "Follow the money! Idaho's very own Kavanaugh." The link posted the image with the picture of Ms. Doe as a minor, and the article contained her name and a link to the unredacted von Ehlinger Response.

58.     On Saturday, April 17, 2021, Giddings sent out her Rep. Priscilla Giddings – District 7 Legislative Update via her legislative email. The Update included defamatory and insulting comments about Ms. Doe under the "ugly" section. That included calling her a "honey trap" and calling the Ethics Committee process "reminiscent of so many national 'Me too' witch hunts." Giddings District 7 Legislative Update also contained a link and encouragement to read the Redoubt News article which publicly identified Ms. Doe and included her photo as a minor.

59.     Idaho Dispatch also posted an article on April 17, 2021, entitled *Rep. von Ehlinger Says Evidence and Polygraph Test Prove Rape Allegation is False*. Although the Idaho Dispatch article redacted Ms. Doe's name because Idaho Dispatch "felt it was standard practice in media to not name accusers," the article included images of the unredacted von Ehlinger Response, which the Idaho Dispatch later removed and apologized for.

60.     At 4:30 pm on April 18, 2021, Leroy informed Ms. Doe's counsel that he had withdrawn from representation of von Ehlinger in the upcoming Ethics Committee proceedings and admitted his "mistake in releasing the unredacted report and profoundly apologize to your client. I am so sorry that I sent out an unredacted verson [sic] of the report. I never intended to do that."

61.     Leroy emailed Giddings on April 19, 2021, at 10:11 a.m., and told her that if she sent the unredacted von Ehlinger Response to Redoubt News, "I would suggest that you likewise request them to delete it immediately."[2]

---

[2] On August 19, 2021, the undersigned counsel made a public records request for all communications between Giddings and Leroy regarding Jane Doe or the ethics committee complaint/hearing against von Ehlinger. Giddings admits she had received two emails from Leroy sent to her legislative email account in about March 2021. Giddings admits that she deleted those emails shortly after she received them. Giddings responded to the public records request by stating that "My office does not have any public record related to your request that isn't already public."

COMPLAINT AND DEMAND FOR JURY TRIAL - 9

62.     Later that morning, Leroy emailed multiple reporters to whom he had sent the unredacted von Ehlinger Response and asked that they contact him. In follow up communications with these reporters, Leroy asked that the reporters delete the unredacted version of the von Ehlinger Response and replace it with a redacted one he sent to them.

63.     On April 19, 2021, attorneys for Ms. Doe alerted the Attorney General's office to the post by Giddings linking to the Redoubt article. Upon information and belief, a Deputy Attorney General told Defendant Giddings to claw back her re-post of the article and to stop publicly shaming Ms. Doe.

64.     Upon information and belief neither Leroy, Giddings nor von Ehlinger ever asked Redoubt News to remove the article, photo of Ms. Doe as a minor, and link, all of which publicly identified Ms. Doe and contained offensive information about her.

65.     On or about April 20, 2021, Giddings reported to an Idaho State Police trooper that she was being "accosted" and/or threatened by Jane Doe.

66.     When the ISP trooper asked Giddings about the interaction with Ms. Doe, Giddings reported that Doe was involved with Rep. von Ehlinger, whom Ms. Doe worked with and also informed the ISP trooper about articles that Giddings had posted on her social media website.

67.     Giddings told the ISP trooper that she believed Ms. Doe was under the influence of drugs, to which the trooper (who had witnessed the interaction between Giddings and Ms. Doe) disagreed and concluded that Ms. Doe was more accurately suffering strong emotional distress.

68.     On April 22, 2021, Gidding requested a copy of the ISP trooper's report and told him he may be called to testify for the Ethics Committee regarding the encounter. He told her that he had not generated a report because he had not observed any criminal violations.

69.     On April 23, 2021, Giddings contacted the ISP trooper again and told him that she believed Ms. Doe violated portions of Idaho Code §18-1353 and §18-6710 and that the encounter may have an influential role in the on-going investigation regarding von Ehlinger and Ms. Doe. Giddings requested that the trooper generate an incident report that she needed for a legislative administrative proceeding no later than 0800 am on the following Monday.

70.     Later that evening, Giddings sent the ISP trooper her official statement on her legislative letterhead regarding the events with Ms. Doe on April 20th. The ISP trooper thereafter completed an incident report as directed by his supervisor.

71.     On April 25, 2021, Giddings sent out another District 7 Legislative Update. In the "bad" section Giddings said that Ms. Doe (who she called the claimant in the on-going Ethics Committee investigation) "accosted" her, causing her to expedite her return into the Capitol and ask for security to intervene. Giddings quoted a voicemail message left by Ms. Doe and said that "apparently she is upset because I referenced information about the Ethics Committee complaint and the counter complaint in my week 12 newsletter," and she provided a link to the April 17, 2021 (week 12) update.

72.     In her "ugly" section of her April 25, 2021, District 7 Legislative Update, Giddings provided a link to an April 22, 2021, Redoubt News article entitled *Kangaroo Court, Part 2: Idaho Swamp Violates Constitutional Rights.* This Redoubt News article outlined concerns with the Ethics Committee hearing process including a statement that von Ehlinger could "easily be denied his right to face his accuser, a violation of the Sixth Amendment." The Redoubt News article referred to the process as a "witch hunt" with a "predetermined outcome" and called it "blatant

tyranny." Once again, the Redoubt News article contained a link to the unredacted response which identified Ms. Doe.[3]

73.     Upon information and belief, other representatives aligned with Giddings and von Ehlinger were taking steps in furtherance of attempting to harass, or cause others to harass, Ms. Doe and to otherwise discourage her from cooperating with the Ethics Committee and with law enforcement. For example,

    a. On or about April 16, 2021, Rep. Heather Scott attempted to gain information about Jane Doe's criminal complaint to the Boise Police Department.

    b. On or about April 26, 2021, Rep. Christy Zito asked other legislators which criminal code is triggered by someone making a "false report," suggesting Ms. Doe could be criminally prosecuted for reporting von Ehlinger's sexual assault of her.

74.     Von Ehlinger's Ethics Committee hearing took place on April 28-29, 2021. Von Ehlinger refused to answer certain questions under oath, exercising his Fifth Amendment right against self-incrimination.

75.     Ms. Doe cooperated in the public Ethics Committee hearing by giving public, sworn testimony.

76.     Von Ehlinger called Giddings as a witness at the Ethics Committee hearing. Giddings provided testimony under oath on April 28, 2021. She testified about an interaction with Ms. Doe outside the capitol building on April 20, 2021 wherein Giddings said Ms. Doe was loud, aggressive and intimidating toward Giddings. Giddings further testified that she thought Ms. Doe was possibly on drugs and had violated several code sections. Giddings testified that she reported the above to the police.

---

[3] At the time of the filing of this Complaint, the link in Giddings newsletter still takes the reader to the Redoubt News Article which still contains the link to the unredacted von Ehlinger Response.

77.     During her testimony Giddings denied posting a picture of, or identifying the name of Ms. Doe, on social media.

78.     The Ethics Committee voted unanimously to recommend that von Ehlinger be expelled from the House. Before the House could vote on his expulsion, von Ehlinger resigned on April 29, 2021.

79.     In her May 2, 2021, District 7 Legislative Update newsletter, Giddings referred to the Ethics Committee's hearing process and stated that "[w]hat actually happened was nothing less than a kangaroo court, which delivered a predetermined verdict, a predetermined punishment, and violated every tenant of due process and good order."

80.     Two ethics complaints were filed against Giddings -- one on April 19, 2021, and another, signed by 24 Representatives, on May 3, 2021.

81.     The May ethics complaint accused Giddings of conduct unbecoming a member of the House, including engaging in sex discrimination and retaliation and bullying of a teenage witness when she disseminated the identity and photo of Ms. Doe and made defamatory statements about her. It also included allegations that Giddings misrepresented her actions under oath during the von Ehlinger Ethics Committee hearing.

82.     The Ethics Committee found probable cause to believe that Giddings had engaged in conduct unbecoming. A public hearing on the May 2021 ethics complaint against Giddings occurred on August 2-3, 2021.

83.     Giddings provided testimony under oath at this Ethics Committee hearing and denied having misrepresented any facts regarding her posting and refused to apologize for her actions.

COMPLAINT AND DEMAND FOR JURY TRIAL - 13

84.     In her witness disclosures for the Ethics Committee hearing, which she chose to release publicly, Giddings represented that Ms. Doe's landlord would discuss "Jane Doe's drug usage habits, mental stability, and how he recently evicted her."

85.     The Ethics Committee unanimously found that Giddings acted in a manner unbecoming of a representative and recommended to the full House that she be censured and stripped of her seat on the House Commerce and House Resources Committee.

86.     The House voted in favor of the Committee's recommendation.

87.     Upon information and belief, Giddings continued to make public and disparaging comments about Ms. Doe including referring to her as a "tramp."

88.     Because of the release of Ms. Doe's identity, Ms. Doe has continually suffered public humiliation and harassment on social media and at public events. For example:

a.     a person dressed in drag as a beauty queen, with a sash that has Ms. Doe's real name and "Miss Idaho Capitol" on it, appears at public and political events mocking her. For example, this person attended the Republican Party's Keep Idaho Red event, and he was live streamed on social media, and photos were also posted with horrific and humiliating comments like, "Miss Idaho Statehouse sure gets around" and "[Doe] hittin [*sic*] on new supply – Humphrey's."

b.     There have been social media posts during or directly after Gidding's Ethics Committee hearing saying: "MY NAME IS [JANE DOE]! SCOTT BEDKE THREW ME A HUGE LEGISLATIVE PARTY THIS WEEK! EVERYONE GOT TOGETHER AND ANYONE WHO MENTIONED MY NAME WAS 86'D!"

c.     A recent post on Facebook included an image of the original Redoubt News article with the photo of Ms. Doe as a minor and said: "SAY HER NAME! [JANE DOE]!"

89.     Von Ehlinger was arrested in Idaho on October 8, 2021 for felony charges of rape and forcible penetration.

90.     After a criminal trial on April 25-29, 2022, a unanimous jury found von Ehlinger guilty of raping Jane Doe.

91.     On August 31, 2022, the Judge sentenced von Ehlinger to 8 to 20 years in prison.

92.     Von Ehlinger is currently incarcerated at the Idaho Correctional Institution, in Orofino, Idaho.

## FIRST CLAIM FOR RELIEF
### (Violation of Ms. Doe's Equal Protection Rights in Violation of 42 U.S.C. § 1983 Against Defendants von Ehlinger and Giddings in their Individual Capacities)

93.     Plaintiff realleges and incorporates by reference all paragraphs set forth above.

94.     Plaintiff, a woman, was sexually assaulted by von Ehlinger on March 9, 2021.

95.     Plaintiff reported the sexual assault to various government officials.

96.     After reporting that von Ehlinger had sexually assaulted her, Defendants von Ehlinger and Giddings, acting individually and in concert, engaged in a campaign of harassment against Plaintiff, a female survivor of sexual assault, in violation of her equal protection rights.

97.     These harassing events included, but are not limited to:

   a.  release into the public sphere of confidential information about Plaintiff including her identity, personal information about her and her family, and defamatory information.

   b.  Encouraging reporters/media outlets to publish this confidential information.

   c.  After one such media outlet published this confidential information and provided a link to the unredacted von Ehlinger Response, Defendant Giddings then publicly commented about Plaintiff and her allegations of sexual assault on numerous

occasions including, but not limited to, calling her a honey trap and referring to the Ethics Committee's process as "witch hunt" and a "kangaroo court."

d.  Giddings also publicly linked to the articles that published the personal and defamatory information about Plaintiff, distributing that information on her legislative social media and through her legislative newsletters.

e.  Giddings also attempted to have Plaintiff criminally charged and demanded a criminal report be created, accusing Plaintiff of violating criminal statutes in order to help von Ehlinger defend against the Ethics Committee complaint.

f.  Defendant Giddings publicly accused Plaintiff of accosting her and of being on drugs.

g.  Defendants von Ehlinger and Giddings, acting individually and in concert, also encouraged behaviors by others (in addition to the public naming and shaming of Plaintiff) to punish and/or discourage her from participating in the Ethics Committee hearing and otherwise cooperating with law enforcement and its investigation of von Ehlinger.

h.  Defendant Giddings continued to make harassing and defaming statements about Plaintiff including calling her a tramp.

98.    Defendants von Ehlinger and Giddings acted under the color of law when depriving Plaintiff of equal treatment under the law because of her sex/status as a survivor of sexual assault.

99.    Their actions violated a clearly established right to not be harassed because of sex/gender and/or as a female survivor reporting sexual assault. A reasonable official should have known about this right.

100.    Defendants von Ehlinger and Giddings' harassment campaign included publicly outing and shaming Plaintiff which deprived her of equal treatment and proximately caused Plaintiff to suffer injuries including extreme and ongoing emotional distress.

101.    Plaintiff has been injured by Defendants' conduct and has suffered and will continue to suffer injuries including severe emotional distress, loss of reputation, and loss of the valuable internship position and the benefits that flow therefrom.

102.    The Defendants' conduct was willful and intentional, malicious and exhibits reckless or callous indifference to Plaintiff's constitutional rights, thereby entitling her to punitive damages.

**SECOND CLAIM FOR RELIEF**
**(Conspiracy to Violate Ms. Doe's Equal Protection Rights in Violation of 42 U.S.C.**
**§ 1985 Against Defendants von Ehlinger and Giddings in their Individual Capacities)**

103.    Plaintiff realleges and incorporates by reference all paragraphs set forth above.

104.    Defendants conspired to deprive Plaintiff, a female survivor of sexual assault, of her equal protection rights as alleged in her First Claim for Relief.

105.    Defendants each acted in furtherance of this conspiracy by harassing Plaintiff in providing and/or publishing information about Plaintiff including her identity, personal information about her and her family, and defamatory information in the public sphere and/or otherwise taking the actions referred to in her First Claim for Relief.

106.    Specifically, Defendant von Ehlinger individually and/or through his attorney publicly released the unredacted report to media outlets. Defendant Giddings then encouraged media outlets to report on and publish the unredacted report. After one such media outlet did so, Defendant Giddings continued to publicize this article and the link to the unredacted report, while making other disparaging comments about Plaintiff and in support of von Ehlinger.

COMPLAINT AND DEMAND FOR JURY TRIAL - 17

107.    Defendants' public outing, shaming and blaming of Plaintiff, deprived her of equal treatment under the law and proximately caused Plaintiff to suffer injuries including extreme and ongoing emotional distress.

108.    Their actions violated a clearly established right to not be harassed because of sex/gender and/or as a female survivor reporting sexual assault. A reasonable official should have known about this right.

109.    Plaintiff has been injured by Defendants' conduct and has suffered and will continue to suffer injuries including severe emotional distress, loss of reputation, and loss of valuable internship position and the benefits that flow therefrom.

110.    The Defendants' conduct was willful and intentional, malicious and exhibits reckless or callous indifference to Plaintiff's constitutional rights, thereby entitling her to punitive damages.

**THIRD CLAIM FOR RELIEF**
**(Violation Of First Amendment Free Speech Right Against**
**Defendants von Ehlinger and Giddings in their Individual Capacities)**

111.    Plaintiff realleges and incorporates by reference all paragraphs set forth above.

112.    Plaintiff engaged in protected speech when she reported von Ehlinger's assault to officials at the Legislature, the Attorney General's office, the House Ethics committee, and law enforcement.

113.    Her speech was inherently a matter of public concern as it involved allegations of sexual assault and conduct unbecoming by a state legislator. In fact, the Ethics Committee found probable cause to bring the complaint forward through a public hearing process that was heavily covered by the media given its public importance.

114.    Von Ehlinger, Giddings, and others acting on their behalf and/or in concert with them took a variety of adverse actions against Plaintiff including, but not limited to:

a.  release into the public sphere of confidential information about Plaintiff including her identity, personal information about her and her family, and defamatory information.

b.  Encouraging reporters/media outlets to publish this information.

c.  After one such media outlet published this information and provided a link to the unredacted von Ehlinger Response, Defendant Giddings then publicly commented about Plaintiff and her allegations of sexual assault on numerous occasions including, but not limited to, calling her a "honey trap" and referring to the Ethics Committee's process as "witch hunt" and a "kangaroo court."

d.  Giddings also publicly linked to the articles that published the personal and defamatory information about Plaintiff distributing them on her legislative social media and through her legislative newsletters.

e.  Giddings also attempted to have Plaintiff criminally charged and demanded a criminal report be created accusing Plaintiff of violating criminal statutes in order to help von Ehlinger defend against the Ethics Committee complaint.

f.  Defendant Giddings publicly accused Plaintiff of accosting her and of being on drugs.

g.  Defendants von Ehlinger and Giddings, acting individually and in concert, also encouraged behaviors by others (in addition to the public naming and shaming of Plaintiff) to punish and/or discourage her from participating in the Ethics

Committee hearing and otherwise cooperating with law enforcement and its investigation of von Ehlinger.

h. Defendant Giddings has continued to make harassing and defamatory statements about Plaintiff, including calling her a tramp.

115. Defendants were acting under the color of law when they took these actions.

116. These adverse actions were reasonably likely to deter Plaintiff from engaging in protected activity under the First Amendment.

117. Plaintiff's speech was a substantial or motivating factor in the adverse actions taken against her.

118. Defendants' actions violated a clearly established right of free speech which a reasonable official should have known.

119. Plaintiff has been injured by Defendants' conduct and has suffered and will continue to suffer injuries including severe emotional distress, loss of reputation, and loss of valuable internship position and the benefits that flow therefrom.

120. The Defendants' conduct was willful and intentional, malicious and exhibits reckless or callous indifference to Plaintiff's constitutional rights, thereby entitling her to punitive damages.

### FOURTH CLAIM FOR RELIEF
#### (Violation Of First Amendment Right to Petition Against
#### Defendants von Ehlinger and Giddings in their Individual Capacities)

121. Plaintiff realleges and incorporates by reference all paragraphs set forth above.

122. The First Amendment to the United States Constitution, provides for the right to "petition the Government for a redress of grievances." This includes reporting criminal conduct and assisting in a law enforcement investigation.

COMPLAINT AND DEMAND FOR JURY TRIAL - 20

123.    Plaintiff engaged in protected activity when she reported von Ehlinger's sexual assault of her to Boise Police Department on March 11, 2021, and when she participated in BPD's investigation of the same.

124.    Plaintiff's petition was made in good faith. It was encouraged and/or directed by the Attorney General's office upon receipt of her complaint to the Asst. Sgt. In Arms. Further, the Ada County prosecutor's office has brought criminal charges against von Ehlinger, The Court found good cause supported the criminal complaint after a preliminary hearing.

125.    Von Ehlinger was found guilty of rape by a unanimous jury of twelve on April 29, 2022.  The Judge sentenced him to 8 to 20 years in prison on August 31, 2022.

126.    Von Ehlinger, Giddings, and others acting on their behalf and/or in concert with them took adverse actions against Plaintiff for having exercised her First Amendment rights as alleged above.

127.    Defendants acted under the color of law when they took these actions.

128.    These adverse actions were reasonably likely to deter Plaintiff from engaging in protected activity under the First Amendment.

129.    Plaintiff's petition was a substantial or motivating factor in the adverse actions taken against her.

130.    Defendants' actions violated a clearly established right to petition the government which a reasonable official should have known.

131.    Plaintiff has been injured by Defendants' conduct and has suffered and will continue to suffer injuries including severe emotional distress, loss of reputation, and loss of valuable internship position and the benefits that flow therefrom.

132.    The Defendants' conduct was willful and intentional, malicious and exhibits reckless or callous indifference to Plaintiff's constitutional rights, thereby entitling her to punitive damages.

## FIFTH CLAIM FOR RELIEF
### (Assault and Battery against von Ehlinger)

133.    Plaintiff realleges and incorporates by reference all paragraphs set forth above.

134.    Defendant von Ehlinger intentionally made physical contact with Ms. Doe.

135.    Defendant von Ehlinger's intentional contact with Ms. Doe was unlawful, harmful, and/or offensive.

136.    Ms. Doe did not consent to the contact by Defendant von Ehlinger.

137.    Defendant von Ehlinger made an unlawful threat or offer to do bodily harm or injury to Ms. Doe.

138.    Defendant von Ehlinger's assault and battery were outside the course and scope of his role as a Legislator and intentional.

139.    Defendant von Ehlinger acted with malice and/or criminal intent in perpetrating the assault and battery on Plaintiff.

140.    Defendant von Ehlinger was found guilty of rape and sentenced to 8 to 20 years in prison.

141.    Ms. Doe suffered damage as a result of the wrongful acts of Defendant von Ehlinger in an amount to be proven at trial, but in excess of this Court's jurisdictional limits.

## SIXTH CLAIM FOR RELIEF
### (Intentional Infliction of Emotional Distress
### against Defendants von Ehlinger and Giddings)

142.    Plaintiff realleges and incorporates by reference all paragraphs set forth above.

143.   Defendant von Ehlinger, through his attorney, was specifically directed not to release any information publicly without redacting Plaintiff's identifying information.

144.   He was told that any such release would cause Ms. Doe to suffer severe emotional distress and perhaps worse, such as threats to her physical safety.

145.   Defendants provided and/or published information about Plaintiff including her identity, personal information about her and her family, and defamatory information in the public sphere and/or otherwise taking the unlawful actions referred to above.

146.   Upon information and belief, a Deputy Attorney General told Defendant Giddings to claw back her re-post of the article and to stop publicly shaming Ms. Doe.

147.   Defendants' conduct was intentional and/or reckless.

148.   Defendants' conduct was extreme and outrageous.

149.   Defendant von Ehlinger and Giddings acted with malice and/or criminal intent.

150.   As a direct and proximate cause of Defendants' extreme and outrageous conduct toward Plaintiff, she has suffered, and continues to suffer severe emotional distress.

151.   Ms. Doe suffered damage as a result of the wrongful acts of Defendants in an amount to be proven at trial, but in excess of this Court's jurisdictional limits.

**SEVENTH CLAIM FOR RELIEF**
**(Negligent Infliction of Emotional Distress**
**against Defendants von Ehlinger and Giddings)**

152.   Plaintiff realleges and incorporates by reference all paragraphs set forth above.

153.   Defendants had legal duties, recognized by law, to not violate equal protection protections, to not violate the First Amendment, and to not intimidate witnesses, among other legal duties.

154.   Defendants and/or their agents breached their legal duties as identified herein.

155.   Defendants' breach of their legal duties and unlawful conduct caused Plaintiff severe emotional distress.

156.   Plaintiff's severe emotional distress has manifested itself in physical symptoms including anxiety, inability to sleep, loss of appetite, the inability to keep food ingested/regular vomiting, headaches and inability to focus, among other physical manifestations.

157.   Ms. Doe suffered damage as a result of the wrongful acts of Defendants in an amount to be proven at trial, but in excess of this Court's jurisdictional limits.

## EIGHTH CLAIM FOR RELIEF
### (Negligence and Negligence *Per Se* against Defendants von Ehlinger and Giddings)

158.   Plaintiff realleges and incorporates by reference all paragraphs set forth above.

159.   Defendants had legal duties, recognized by law, requiring them to conform to certain standards of conduct.

160.   Idaho Code §18-2604 prohibits and makes it unlawful for individuals to "by any manner" willfully intimidate, influence, impede, deter, threaten, harass, obstruct or prevent a witness from testifying in a civil or criminal proceeding.

161.   Idaho Code §18-2604 was enacted to prevent the type of witness intimidation which occurred in this matter.

162.   Ms. Doe is and was a member of the class of persons the witness intimidation statute was designed to protect.

163.   Defendants were aware of and trained on the Respectful Workplace Policy of the Idaho Legislative Branch which is "applicable to all members of the Idaho Legislature, legislative employees, legislative interns and volunteers, and legislative partners in the course of conducting state business."

164.    The Policy provides that that the Legislature is "committed to creating and maintaining a respectful work environment" and "an environment that is free from harassment and discrimination," and that the Legislature "will strive to prevent, eliminate, and impede the recurrence of harassing and discriminatory behavior and retaliation against individuals who report, in good faith, violations of this policy." The policy also says that "retaliation is strictly prohibited."

165.    Jane Doe was provided a copy of this policy and also received training on the policy.

166.    The policy and its provisions created a duty to refrain from harassing, discriminating, and/or retaliating against legislative interns like Jane Doe.

167.    Defendants breached their legal duties as identified herein.

168.    Defendants' breach of their legal duties and unlawful conduct caused injury and damage to Plaintiff.

169.    Defendants' conduct constitutes negligence per se.

170.    Defendants' breach was willful and intentional.

171.    Defendants' conduct was outrageous, reckless, careless, and without due regard to consequences.

172.    Ms. Doe suffered damage as a result of the wrongful acts of Defendants in an amount to be proven at trial, but in excess of this Court's jurisdictional limits.

### NINTH CLAIM FOR RELIEF
### (Invasion of Privacy Defendants von Ehlinger and Giddings)

173.    Plaintiff realleges and incorporates by reference all paragraphs set forth above.

174.    The Defendants' actions identified herein intruded upon Ms. Doe's seclusion or solitude, and/or into her private affairs.

175.    Defendants' actions intruded upon areas which were, and are entitled to be, private.

176. Ms. Doe's expectation of privacy was reasonable.

177. Defendants publicly disclosed embarrassing private facts about Ms. Doe.

178. The public disclosures of embarrassing private facts about Ms. Doe by Defendants were such that it is offensive and objectionable to a reasonable person.

179. Defendants caused and/or created publicity which placed Ms. Doe in a false light in the public eye.

180. Defendants publicly disclosed falsity or fiction concerning Ms. Doe.

181. Defendant von Ehlinger and Giddings acted with malice and/or criminal intent.

182. Ms. Doe suffered damage as a result of the wrongful acts of Defendants in an amount to be proven at trial, but in excess of this Court's jurisdictional limits.

## ELEVENTH CLAIM FOR RELIEF
### (Defamation against Defendant Giddings)

183. Plaintiff realleges and incorporates by reference all paragraphs set forth above.

184. Defendant Giddings communicated information concerning Jane Doe to others and published and republished information about Jane Doe to others.

185. That information communicated and published by Giddings was defamatory, disgraced, and degraded Jane Doe, and subjected her to public hatred, contempt or ridicule.

186. The information communicated and published by Giddings impugned Ms. Doe's integrity, virtue and reputation.

187. The information was false.

188. Giddings knew or reasonably should have known that the information was false.

189. Ms. Doe was not a public official.

190. Plaintiff suffered damage, severe emotional distress and damages to her reputation as a result of Giddings' communications and publication of information.

COMPLAINT AND DEMAND FOR JURY TRIAL - 26

191.    Giddings' actions were done with malice and/or criminal intent.

192.    Jane Doe seeks all available remedies and damages as a result of Giddings' defamatory actions.

### **Prayer for Relief**

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendant, and award the following relief:

    a.    Compensatory (emotional distress) and consequential damages;

    b.    Punitive damages with regard to her federal claims;

    c.    Injunctive and/or declaratory relief;

    d.    Pre-judgment and post-judgment interest at the highest lawful rate;

    e.    Attorneys' fees and costs of this action, including expert witness fees, as appropriate; and

    f.    Any such further relief as justice allows or that the Court deems proper.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Dated this 8th day of March 2023.

                       **STRINDBERG SCHOLNICK BIRCH**
                       **HALLAM HARSTAD THORNE**

                       /s/ Erika Birch
                       Erika Birch
                       Guy Hallam
                       *Attorneys for Plaintiff*